**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ISMAEL RAMOS, JR. : | |
| 6075 Main St. : | |
| Center Valley, PA 18034 : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | No.: |
| v. : | |
| : | |
| COUNTY OF BUCKS : | |
| o/a BUCKS COUNTY SHERIFF'S : | |
| DEPARTMENT : | **JURY TRIAL DEMANDED** |
| 100 North Main St. : | |
| Doylestown, PA 18901 : | |
| and : | |
| PERRY FERRARA, *in his individual* : | |
| *capacity* : | |
| 100 North Main St. : | |
| Doylestown, PA 18901 : | |
| : | |
| Defendants. : | |
| : | |

## CIVIL ACTION COMPLAINT

Plaintiff, Ismael Ramos (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

### I. Introduction

1.      Plaintiff has initiated this action to redress violations by Defendant, County of Bucks o/a Bucks County Sherriff's Department (hereinafter "Defendant BCSD") of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq*.), 42 U.S.C. §1981, the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601, *et. seq*.), and constitutional violations through 42 U.S.C. § 1983. Plaintiff has also initiated this action to redress violations by Defendant BCSD and Defendant Perry Ferrara (hereinafter "Defendant Ferrara") for violations of 42 U.S.C. §1981, 42

U.S.C. §1983 and the FMLA [1] Plaintiff seeks damages in connection with Defendants aforementioned violations as set forth more fully herein.

## II.   Jurisdiction and Venue

2.     This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310 (1945) and its progeny.

3.     This action is initiated pursuant to a federal law(s). The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States.

4.     Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.     As to any claims involving statutes requiring administrative exhaustion, including but not limited to Title VII and the ADA, Plaintiff timely filed a Charge with the Equal Employment Opportunity Commission ("EEOC").  This Charge, docket # 530-2021-00833, was not only timely filed but also administratively closed.  Plaintiff received a right-to-sue letter from the EEOC on July 30, 2021. Plaintiff thus also timely files the instant lawsuit within 90 days of receiving said right-to-sue ("RTS") letter. In all aspects, Plaintiff has properly exhausted his federal administrative remedies.

---

[1] Defendant Ferrara and Defendant Bucks are hereinafter collectively referred to as "Defendants" unless indicated otherwise.

### III.     Parties

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult who resides at the above-captioned address.

8.      Defendant BCSD is a county department located at the above-captioned address.

9.      Defendant Ferrara was at all relevant times herein the Chief Deputy Sheriff at Defendant BCSD.

10.     At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendants.

### IV.     Factual Background

11.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12.     Plaintiff is a Hispanic (Puerto Rican) male.

13.     Plaintiff has been employed with Defendant BCSD since on or about August 7, 2015 as a Deputy Sheriff.

14.     At all times relevant to this lawsuit, the Sheriff of Defendant BCSD was Sheriff Milton Warrell (hereinafter "Sheriff Warrell").

15.     During his tenure as Deputy Sheriff, Plaintiff has been primarily supervised by Sergeant James Mitchell (hereinafter "Sergeant Mitchell").

16.     Until in or about late 2020, Sherriff Warrell's second-in-commanded was Defendant Ferrara. Therefore, at all times relevant to the instant action, Plaintiff also generally reported to Defendant Ferrara.

17.     Plaintiff was the only Puerto Rican/Hispanic (Latino) employee in his department during the relevant time period and while under the supervision of Defendant Ferrara, Plaintiff observed and was personally subjected to discriminatory treatment by Defendant Ferrara because of his race and/or national origin.

18.     The racial discriminatory treatment that Plaintiff was subjected to by Defendant Ferrara included but was not limited to:

    i.    Unlike Plaintiff's non-Hispanic/Puerto Rican co-workers, Plaintiff was treated in a rude and condescending manner by Defendant Ferrara;

    ii.    Unlike Plaintiff's non-Hispanic/Puerto Rican co-workers, Plaintiff was belittled and humiliated by Defendant Ferrara in front of other employees, such as referring to Plaintiff as "dancing monkey," "fuck-up," and "stupid;"

    iii.    Defendant Ferrara attempted to convince the Sergeant in charge of SWAT to have Plaintiff removed from his SWAT duties for no legitimate reason. Upon information and belief, Defendant Ferrara did not attempt to do this with other non-Hispanic and/or non-Puerto Rican employees;

    iv.    Defendant Ferrara mockingly stated to Plaintiff on several occasions that he was trying to take care of Plaintiff because he [Defendant Ferrara] was a member of the Latino Deputies Association. Upon information and belief, Defendant Ferrara is not Latino and there is no such Latino Deputies Association; and

    v.    Unlike Plaintiff's non-Hispanic/Puerto Rican co-workers, Defendant Ferrara selectively enforced policies against Plaintiff.

19.     As a result of Defendant Ferrara's discriminatory and hostile behavior based on Plaintiff's race and/or national origin, Plaintiff engaged in protected activity by expressing concerns of racial and national origin discrimination to Defendant's management and his union.

20.     Despite Plaintiff's aforesaid complaints of racial and/or national origin discrimination against Defendant Ferrara, his concerns were never properly investigated and no remedial action was taken by Defendant's management.

21.     In fact, Defendant Ferrara's hostility, animosity, and harassment only increased following Plaintiff's aforementioned protected activity and following a work-related injury that he suffered in on or about January 21, 2020 to his left calf (including tears, clots and other complications).

22.     Plaintiff's aforesaid health condition (discussed *supra*) limited Plaintiff's ability (at times)  to perform some daily lift activities, including but not limited to working, lifting, standing for long periods of time, and performing manual tasks.

23.     Following his aforesaid work-related injury, Plaintiff took a few days off from work, reported the injury to Defendant, and filed for worker's compensation benefits.

24.     Defendant BCSD's worker's compensation physician recommended that Plaintiff take a brief medical leave until in or about early February of 2020 (an FMLA-qualifying medical leave) – which was accommodated by Defendant BCSD.

25.     Plaintiff returned from his aforesaid medical leave in or about early February of 2020.

26.     Because of his aforesaid disabilities, Plaintiff was still limited in some of his daily lift activities and therefore it was requested that he be permitted to perform light duty work upon his return from medical leave in February of 2020 (a reasonable accommodation under the

ADA).

27.     Plaintiff's aforesaid need for light duty was accommodated until in or about April of 2020, when Plaintiff was released to return to work on a full duty basis.

28.     After learning of Plaintiff's disabilities, his need for reasonable accommodations, and his worker's compensation claim, Plaintiff was subjected to increased animosity and hostility from Defendant BCSD and Defendant Ferrara because of his race/national origin, his actual/perceived/record of disability and/or in retaliation for engaging in protected activity under Title VII and the ADA. For example, but not intending to be an exhaustive list:

a.  Upon learning that Plaintiff reported a work-related injury and filed a worker's compensation claim, Defendant Ferrara instantly questioned Plaintiff's injury and whether it had occurred at work. Plaintiff never observed Defendant Ferrara question other non-Hispanic employees worker's compensation claims like he did with Plaintiff's;

b.  Shortly after returning to work on light duty in or about February of 2020 (discussed *supra*), Plaintiff scheduled time off to attend medical appointments for his work-related injury/health conditions (a reasonable accommodation under the ADA and FMLA-qualifying leave), which was approved.  In connection with this request for scheduled time off, Defendant Ferrara told Plaintiff that he did not need to use "personal time" for his doctor's visits and required Plaintiff to remove his personal leave request. However, when Plaintiff subsequently took the time off, Defendant Ferrara accused him of not reporting for duty, in an effort to discipline him. Defendant Ferrara then required Plaintiff to provide a written account for every minute of the two days he took off for medical reasons;

c.  Defendant Ferrara requested from Sheriff Warrell that Plaintiff be removed from his SWAT duties simply because he did not think someone "like [Plaintiff]" should be in SWAT. Plaintiff was in fact removed from his SWAT duties as a result of Defendant Ferrara's discriminatory and retaliatory request and as a result, Plaintiff lost the chance for additional overtime;

d.  On one occasion, shortly after the COVID-19 pandemic surfaced, the courthouses closed in Bucks County. However, despite the courthouse closures, Plaintiff and other officers within his department were still going into work every day. At one point, Plaintiff was instructed by Defendant Ferrara to remain at home until the courthouses reopened. No other officer was required to stay at home during this time.  Plaintiff remained home for approximately two weeks until he was allowed to return to work with the rest of his colleagues; and

e.  When Plaintiff met with Defendant Ferrara and his union steward and representative to complain about Defendant's Ferrara's behavior and to discuss accusations that Defendant Ferrara had made about Plaintiff, Defendant Ferrara mockingly stated "I am just taking care of him, because I'm a member of the Latino Deputies Association, and no one else would." As stated above, this comment had been made to Plaintiff on multiple occasions prior to this incident, but this is the first time that Defendant Ferrara said it in front of other witnesses. Both Plaintiff's union steward and representative exchanged shocked looks at Defendant Ferrara's aforesaid racist comment.

29.   In addition to the foregoing and probably one of the most egregious examples of Defendant's Ferrara's discriminatory and retaliatory behavior was when he referred Plaintiff to

the Bucks County District Attorney's ("DA") office  for criminal prosecution and investigation, claiming that he had committed insurance fraud and falsified documents.

30.     Within days after referring Plaintiff to the Bucks County DA's office for criminal investigation and prosecution, a detective dropped the investigation and any prosecution into Defendant Ferrara's allegations regarding Plaintiff.

31.     Upon information and belief and despite its decision to not investigate or prosecute Plaintiff criminally, Defendant Ferrara still continued to request the Bucks County DA's office to reconsider (but it never did).

32.     Defendant Ferrara then proceeded to conduct an internal investigation into allegations that Plaintiff (1) falsified documentation; (2) lied about being injured and/or needing light duty (amounting to worker's compensation insurance fraud); (3) lied about his need for time off related to his worker's compensation injury/health condition; and (4) lied about having a second job. Defendant Ferrara's allegations and investigation were completely pretextual and were only instituted as a means to try and conceal Defendant Ferrara's discriminatory and retaliatory attempts to have Plaintiff fired from his employment with Defendant BCSD.

33.     Following Defendant Ferrara's baseless allegations and accusations, Plaintiff followed his chain of command and reported Defendant Ferrara's discriminatory and retaliatory actions and unsubstantiated claims to Sheriff Warrell.

34.     Sheriff Warrell did nothing to investigate or address Plaintiff's continued complaints of discrimination and retaliation (based on race, national origin, disability, and protected activities) and merely directed Plaintiff back to Defendant Ferrara.

35.     Upon information and belief and despite Defendant Ferrara's discriminatory and retaliatory internal investigation, Plaintiff has been cleared of Defendant Ferrara's allegations

and Plaintiff continues to be employed with Defendant BCSD.

36.     However, in addition to referring Plaintiff to the Bucks County DA's office, performing his own internal investigation, and vehemently attempting to get Plaintiff terminated from Defendant BCSD, Defendant Ferrara also went as far as to interfere with Plaintiff's second job from, which he was ultimately terminated as a result of Defendant Ferrara's false allegations.

**Plaintiff's Employment with the Borough of Stockertown Police Department**

37.     It was anticipated that Plaintiff was going to start employment with the Borough of Stockertown Police Department ("Stockertown") on a part-time basis beginning in or about January/February of 2021.

38.     However, due to Plaintiff's aforesaid January 21, 2021 worker's compensation injury and related health condition, he was unable to begin his employment with Stockertown as anticipated.

39.     If fact, Plaintiff was informed by the Chief of Stockertown, Chief Eric Schwab (hereinafter "Chief Schwab"), that because of the urgent need for an officer in Stockertown, he may not be able to wait for Plaintiff to recuperate and would likely have to fill the vacant position.

40.     Eventually, Chief Schwab and the Mayor of the Borough of Stockertown approved Plaintiff's employment and offered him "light duty" training and desk work.

41.     While employed with Stockertown, Defendant Ferrara attempted to reach out to Chief Schwab on numerous occasions, in order to harass Plaintiff at his second job and get him fired from his new employment.

42.     This harassment reached its zenith when or about May 15, 2021 (one day before Plaintiff was scheduled for a Loudermill Hearing with Defendant BCSD pertaining to Defendant

Ferrara's aforementioned discriminatory and retaliatory allegations), Defendant Ferrara contacted Chief Schwab at Stockertown and informed him that Bucks County was bringing criminal charges against Plaintiff for insurance fraud. *See* Mayor Kenneth Zemencsik's certification, attached hereto as "Exhibit A."

43.     Defendant Ferrara's statement to Chief Schwab was completely false and Defendant Ferrara knew it was false, as the Bucks County DA's office had already advised Chief Ferrara and Defendant BCSD months before that it was not going to proceed with any criminal investigation or prosecution against Plaintiff.

44.     The next day, on or about May 16, 2020, Plaintiff was called to a meeting with Chief Schwab of Stockertown. Mayor Kenneth Zemencsik ("Mayor Zemencsik") of the Borough of Stockertown was in attendance for this meeting by telephone.

45.     During his meeting with Chief Schwab and Mayor Zemencsik, Plaintiff was informed by Chief Schwab that he had "learned some disturbing things about [Plaintiff] the day before" (from Defendant Ferrara). Chief Schwab then advised Plaintiff that he could resign from Stockertown or Chief Schwab and Stockertown would terminate Plaintiff and bring him up on Charges with the Northampton District Attorney's office.

46.     Plaintiff refused to resign from Stockertown and as a result was terminated from his job with Stockertown based on Defendant Ferrara's false statement made the day prior.

47.     Therefore, based of Chief Ferrara's unsubstantiated and false statement and as a direct result of Chief Ferrara's discriminatory and retaliatory actions, Plaintiff's employment with Stockertown was terminated.

**Count I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**(Race/National Origin Discrimination & Retaliation – Hostile Work Environment)**
**-Against Defendant BCSD Only-**

48.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49.     Plaintiff was subjected to a hostile work environment based on his race and/or national origin.

50.     Plaintiff complained of the aforesaid discriminatory behavior, primarily being exhibited by Defendant Ferrara; however, his concerns were never properly investigated or resolved.

51.     Instead, Defendant Ferrara's discriminatory/retaliatory behavior towards Plaintiff only grew worse to the point that Defendant Ferrara referred Plaintiff for criminal investigation and prosecution with the Bucks County DA's office, had Defendant BCSD conduct an internal investigation into his false allegations (after the Bucks County DA's office indicated it would not pursue any further criminal investigation or prosecution against Plaintiff), attempted to issue Plaintiff discipline and/or terminate his employment based on false allegations, and made false statement to Plaintiff's second job that the Bucks County DA's office was bringing criminal charges against Plaintiff for insurance fraud.

52.     Plaintiff believes and therefore avers that he was subjected to a hostile work environment based on his race/national origin and/or in retaliation for complaining of racial/national origin discrimination.

**Count II**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**(Race/National Origin Discrimination & Retaliation – Interference with Other Employment)**
**- Against Defendant BCSD Only –**

53.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

54.     Defendant Ferrara's discriminatory and retaliatory behavior towards Plaintiff became so egregious that on May 15, 2021, Defendant Ferrara made a false statement to Plaintiff's second job at Stockertown, stating that the Bucks County DA's office was bringing criminal charges against Plaintiff for insurance fraud.

55.     This discriminatory and retaliatory action by Defendant Ferrara (discussed in Paragraph 54) resulted in Plaintiff being terminated from his second job with Stockertown.[2]

**Count III**
**Violations of 42 U.S.C. § 1981 (through 42 U.S.C. §1983)**
**(Race/National Origin Discrimination – Hostile Work Environment)**
**- Against Defendant Ferrara Only –**

56.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57.     Plaintiff was subjected to a hostile work environment based on his race and/or national origin by Defendant Ferrara

58.     Plaintiff complained of the aforesaid discriminatory behavior, primarily being exhibited by Defendant Ferrara; however, his concerns were never properly investigated or resolved.

59.     Instead, Defendant Ferrara's discriminatory/retaliatory behavior towards Plaintiff only grew worse to the point that Defendant Ferrara referred Plaintiff for criminal investigation

---

[2] Courts throughout the 3rd Circuit have held that a defendant's interference with outside employment in retaliation for engaging in protected activity is illegal under Title VII. *McIntyre v. Cty. of Del.*, No. 18-5066, 2019 U.S. Dist. LEXIS 140415, at *8 (E.D. Pa. Aug. 16, 2019); *Boandl v. Geithner*, 752 F. Supp. 2d 540, 567 (E.D. Pa. 2010); *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 200 (3d Cir. 1994).

and prosecution with the Bucks County DA's office, had Defendant BCSD conduct an internal investigation into his false allegations (after the Bucks County DA's office indicated it would not pursue any further criminal investigation or prosecution against Plaintiff), attempted to issue Plaintiff discipline and/or terminate his employment based on false allegations, and made false statement to Plaintiff second job that the Bucks County DA's office was brining criminal charges against Plaintiff for insurance fraud.

60.     Plaintiff believes and therefore avers that he was subjected to a hostile work environment based on his race/national origin and/or in retaliation for complaining of racial/national origin discrimination.

**Count IV**
**Violations of 42 U.S.C. § 1981 (through 42 U.S.C. §1983)**
**(Race/National Origin Discrimination & Retaliation – Interference with Other Employment)**
**- Against Defendant Ferrara Only –**

61.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

62.     Defendant Ferrara's discrimination and retaliatory behavior towards Plaintiff (based his prior complaints of race/national origin discrimination) became so egregious that on May 15, 2021, Defendant Ferrara made a false statement to Plaintiff's second job at Stockertown, stating that the Bucks County DA's office was bringing criminal charges against Plaintiff for insurance fraud.

63.     This discriminatory and retaliatory action by Defendant Ferarra (discussed in Paragraph 62) resulted in Plaintiff being terminated from his second job with Stockertown.[3]

**Count V**
**Violations of the Americans with Disabilities Act ("ADA")**

---

[3] *McKenna v. Pac. Rail Serv.*, 32 F.3d 820, 826 n. 3 (3d Cir. 1994) (claims under Title VII, section 1983, and section 1981are analyzed under the same standard).

**(Actual/Perceived/Record of Disability Discrimination & Retaliation - Hostile Work Environment)**
**-Against Defendant BCSD Only-**

64.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

65.     Plaintiff suffered from qualifying health conditions under the ADA which, at times, limited his ability to perform some daily life activities (discussed *supra*).

66.     After apprising Defendant Ferrara of his aforesaid health conditions and limitations and following his requests for reasonable medical accommodations under the ADA, Plaintiff was subjected to discriminatory and retaliatory treatment (in response to his requests for reasonable medical accommodations) by Defendant BCSD – primarily Defendant Ferrara.

67.     Defendant Ferrara's discriminatory and retaliatory behavior towards Plaintiff was so egregious and escalated to the point that Defendant Ferrara referred Plaintiff for criminal investigation and prosecution with the Bucks County DA's office, had Defendant BCSD conduct an internal investigation into his false allegations (after the Bucks County DA's office indicated it would not pursue any further criminal investigation or prosecution against Plaintiff), attempted to issue Plaintiff discipline and/or terminate his employment based on false allegations, and made false statement to Plaintiff's second job that the Bucks County DA's office was bringing criminal charges against Plaintiff for insurance fraud.

68.     Plaintiff believes and therefore avers that he was subjected to a hostile work environment based on his actual/perceived/record of disability and/or in retaliation for requesting reasonable accommodations under the ADA.

**Count VI**
**Violations of the Americans with Disabilities Act ("ADA")**
**(Actual/Perceived/Record of Disability Discrimination & Retaliation**
**Interference with Other Employment)**
**-Against Defendant BCSD Only-**

69.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

70.     Defendant Ferrara's discriminatory and retaliatory behavior towards Plaintiff (based his requests for reasonable accommodations under the ADA) became so egregious that on May 15, 2021, Defendant Ferrara made a false statement to Plaintiff's second job at Stockertown, stating that the Bucks County DA's office was bringing criminal charges against Plaintiff for insurance fraud.

71.     This discriminatory and retaliatory action by Defendant Ferrara (discussed in Paragraph 70) resulted in Plaintiff being terminated from his second job with Stockertown.[4]

**Count VII**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Retaliation)**
**- Against Both Defendants -**

72.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

73.     Plaintiff requested a medical leave of absence in or about January of 2021 due to a serious health condition (an FMLA-qualifying leave).

74.     Upon his return to work from an FMLA-qualifying leave, Plaintiff was subjected to harassment and retaliation by Defendants, including but not limited to referring Plaintiff for criminal investigation and prosecution with the Bucks County DA's office based on false

---

[4] *Mullen v. Chester Cty. Hosp.*, No. 14-2836, 2015 U.S. Dist. LEXIS 57060, at *29 (E.D. Pa. Apr. 30, 2015) citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997) (when discussing retaliation in the form of interfering with other employment, ADA retaliation claims are analyzed under same framework as Title VII retaliation claims).

allegations, conducting an internal investigation into false allegations about Plaintiff (after the Bucks County DA's office indicated it would not pursue any further criminal investigation or prosecution against Plaintiff), attempting to issue Plaintiff discipline and/or terminate his employment based on false allegations, and making a false statement to Plaintiff's second job that the Bucks County DA's office was bringing criminal charges against Plaintiff for insurance fraud.

75.     This retaliatory action of making a false statement to Plaintiff's second job at Stockertown resulted in Plaintiff being terminated from this job.

76.     These actions as aforesaid constitute FMLA retaliation violations.[5]

**Count VIII**
**Defamation of Character (by and through 42 U.S.C. § 1983)**
**- Against Defendant Ferrara Only-**

77.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

78.     On or about May 15, 2020, Defendant Ferrara provided false information to Plaintiff's manager at his second job with Stockertown, Chief Schwab.

79.     The false information provided to Chief Schwab by Defendant Ferrara resulted in Plaintiff's termination from Stockertown.

80.     Specifically, Defendant Ferrara stated to Chief Schwab that Bucks County was bringing criminal charges against Plaintiff for insurance fraud.

---

[5] *Mullen v. Chester Cty. Hosp.*, No. 14-2836, 2015 U.S. Dist. LEXIS 57060, at *29 (E.D. Pa. Apr. 30, 2015) (confirming that a claim for interfering with outside employment or job opportunities in retaliation for engaging in protected activity is legally supported under the FMLA).

81.     Defendant Ferrara's aforesaid false statement was defamatory in the sense that (1) it was untrue; (2) Defendant Ferrara knew such statement to be untrue at the time that it was made; and (3) such statement was made by Defendant Ferrara with the intent to harm Plaintiff's reputation and cause him to be fired from Stockertown.

82.     The aforesaid false statement made by Defendant Ferrara to Chief Schwab regarding Plaintiff was false and made maliciously, negligently, knowingly, and recklessly.

83.     The aforesaid false statement made by Defendant Ferrara resulted in Plaintiff being deprived of rights or status guaranteed by state law or the federal Constitution, as he was removed from his employment as an officer with Stockertown.[6]

84.     Defendant Ferrara was acting under the color of state law when he made the aforesaid false and defamatory statement about Plaintiff to Chief Schwab.

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

A.     Defendant BCSD is to be prohibited from continuing to maintain its illegal policy, practice, or custom of retaliating against employees and is to be ordered to promulgate an effective policy against such discrimination/retaliation and to adhere thereto (awarding Plaintiff such injunctive and/or equitable relief);

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, bonuses and medical and other benefits.  Plaintiff should be accorded those benefits illegally withheld from the date

---

[6] Defamation of character is actionable under 42 U.S.C. § 1983 "if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Clark v. Falls*, 890 F.2d 611, 619 (3d Cir. 1989) (citing *Paul v. Davis*, 424 U.S. 693, 701-12, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)). *See also*

she first suffered discrimination or retaliation at the hands of Defendants until the date of verdict (in addition to front pay or other equitable relief);

C.     Plaintiff is to be awarded punitive damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish the individually-named Defendants in this action for their willful, deliberate, malicious and outrageous conduct, and to deter others from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to emotional distress/pain and suffering damages - where permitted under applicable law(s)).

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.     Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

G.     Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

Ari R. Karpf, Esquire
3331 Street Road
Building 2, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: October 28, 2021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## <u>CASE MANAGEMENT TRACK DESIGNATION FORM</u>

|  |  |
|---|---|
| Ismael Ramos, Jr. | CIVIL ACTION |
| v. |  |
| County of Bucks o/a Bucks County Sheriff's Department, et al. | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security -- Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (X )

|  |  |  |
|---|---|---|
| 10/28/2021 |  | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __6075 Main Street, Center Valley, PA 18034_____

Address of Defendant: __100 North Main Street, Doylestown, PA 18901_____

Place of Accident, Incident or Transaction: __Defendants place of business_____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?                                   Yes ☐    No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?          Yes ☐    No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?                                        Yes ☐    No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __10/28/2021__      _____      _____ARK2484 / 91538_____
                          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

| **A.** | **Federal Question Cases:** | **B.** | **Diversity Jurisdiction Cases:** |
|---|---|---|---|

**A.   Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☒ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.   Diversity Jurisdiction Cases:**

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Ari R. Karpf_____, counsel of record *or* pro se plaintiff, do hereby certify:

☒   Pursuant to Local Civil Rule 53.2, § 3(c ) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐   Relief other than monetary damages is sought.

DATE: __10/28/2021__      _____      _____ARK2484 / 91538_____
                          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

RAMOSE, JR., ISMAEL

**(b)**  County of Residence of First Listed Plaintiff    Lehigh
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS

COUNTY OF BUCKS O/A BUCKS COUNTY SHERIFF'S DEPARTMENT, ET AL.

County of Residence of First Listed Defendant    Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | X 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>X 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V.  ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| X 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); Section 1981 (42USC1981); ADA (42USC12101); FMLA (29USC2601); 42USC1983

Brief description of cause:
Violations of Title VII, Section 1981, ADA, FMLA and Section 1983.

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:    X Yes    ☐ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE                                        DOCKET NUMBER

DATE    10/28/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____

| Print | Save As... | Reset |